IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
At Albuquerque NM

OCT 1 1 2017

MATTHEW J. DYKMAN
CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cr. No. 16-4711 JH |
| | ) | |
| DAVID A. HICKMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States Attorney for the District of New Mexico, the Defendant, DAVID A. HICKMAN, and the Defendant's counsel, Zachary Ives, Esquire:

## REPRESENTATION BY COUNSEL

1.     The Defendant understands the Defendant's right to be represented by an attorney and is so represented.   The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2.     The Defendant further understands the Defendant's rights:

a.     to be prosecuted by indictment;

b.     to plead not guilty, or having already so pleaded, to persist in that plea;

c.     to have a trial by jury; and

d.     at a trial:

1)     to confront and cross-examine adverse witnesses,

2)      to be protected from compelled self-incrimination,

3)      to testify and present evidence on the Defendant's own behalf, and

4)      to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.      The Defendant agrees to waive these rights and to plead guilty to the indictment,

charging arson in violation of 18 U.S.C. § 844(i), and to an information charging him with four

additional counts of arson in violation of 18 U.S.C. § 844(i).

## SENTENCING

4.      The Defendant understands that the minimum and maximum penalty provided by

law for *each* charge to which he is pleading guilty is:

a.      imprisonment for a period of not less than five (5) years and not more than

twenty (20) years;

b.      a fine not to exceed the greater of $250,000.00, or twice the pecuniary

gain to the Defendant or pecuniary loss to the victim;

c.      a term of supervised release of not more than three (3) years to follow any

term of imprisonment.   (If the Defendant serves a term of imprisonment,

is then released on supervised release, and violates the conditions of

supervised release, the Defendant's supervised release could be revoked

— even on the last day of the term — and the Defendant could then be

returned to another period of incarceration and a new term of supervised

release.);

d.      a mandatory special penalty assessment of $100.00; and

2

e.     restitution as may be ordered by the Court.

5.     The parties recognize that the federal sentencing guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes.

6.     The parties are aware that the Court will decide whether to accept or reject this plea agreement.   The Court may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report.   Pursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects this plea agreement, the Defendant shall have the right to withdraw the Defendant's plea of guilty.

7.     Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including, but not limited to, information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

## ELEMENTS OF THE OFFENSE

8.     If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, for each count of the indictment and information, each of the following elements of the crime of arson under 18 U.S.C. § 844(i):

*First:*  that the Defendant maliciously damaged or destroyed, or attempted to maliciously damage or destroy, the real or personal property named in the indictment or information;

*Second:*   that the Defendant did so, or attempted to do so, by means of fire or an explosive; and

3

*Third:* that at the time of the fire or explosion, or attempted fire or explosion, the real or personal property described in the indictment or information was used in interstate commerce, or was used in an activity affecting interstate commerce.

To "maliciously" damage or destroy a piece of property means to damage or destroy the property intentionally or with willful disregard of the likelihood that damage to the property or destruction of the property will result from one's actions.

## DEFENDANT'S ADMISSION OF FACTS

9.      By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty.   I recognize and accept responsibility for my criminal conduct.   Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the indictment and information that increase the statutory minimum or maximum penalties.   I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

a.      For the period from on or about November 16, 2016 through on or about November 26, 2016, I was responsible for either starting, or attempting to start, nine separate arson fires at different buildings located in Albuquerque, New Mexico.   Those buildings included the Starbucks Coffee shop located at 800 Broadway Boulevard N.E., the building housing Project Defending Life located at 625 San Mateo Boulevard,

4

N.E., the Carlisle Condominiums located at 3600 Central Avenue S.E., the Starbucks Coffee shop located at 5301 Gibson Boulevard, S.E., the Starbucks Coffee shop located at 4407 Lomas Boulevard N.E., the Starbucks Coffee shop located at 3400 Central Avenue, S.E., the Barnes & Noble bookstore located at the Coronado Mall at 6600 Menaul Boulevard, N.E., the building housing "Shred-it," a paper shredding company, located at 1415 Broadway Boulevard, N.E., and the Old Navy retail store located at 4900 Cutler Avenue, N.E.

b.    Specifically, as charged in the indictment, on or about November 26, 2016, in Bernalillo County, in the District of New Mexico, I maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire, the Old Navy store building located at 4900 Cutler Avenue, N.E., Albuquerque, New Mexico, which building was used in interstate commerce and in an activity affecting interstate commerce.

c.    I got inside of the Old Navy store at approximately 1:10 a.m. by shooting several rounds from my 7.62-caliber assault rifle into the windows of the store.   The rounds shattered the window, which allowed me to get inside of the store.   Inside the store, I wore dark clothes and a mask.   I also carried my rifle on my back inside the store and I had a .45-caliber handgun and several devices I had made in order to start the fire.   The devices I used at the Old Navy store consisted of glass Mason jars filled with ignitable liquid, such as gasoline.   I taped rope cord on the Mason

jars to make handles.   Once inside, I threw several of the Mason jar devices around different parts of the store.   I lit the fuel I had spread in this manner using a road flare, starting several fires, and then drove away from the store.   I also discharged two .45-caliber rounds in the store.   As I was driving away from the Old Navy fire at the intersection of Menaul Boulevard and Carlisle Boulevard, several Albuquerque Police Department officers pulled me over and arrested me.   I now understand that the officers had seen me leave the Old Navy store and followed me. At the time of my arrest, the officers took the .45-caliber handgun from the holster I was wearing, a road flare from my belt, and my 7.62-caliber assault rifle from inside my car.   Inside my car, the officers also found several more items, including more of the glass Mason jar devices I had used at the Old Navy store, a roll of black Gorilla-brand tape, ammunition for my guns, a plastic container of kerosene, "Tannerite" (which is an explosive that will explode when shot by a high velocity bullet) and some motor oil.   Agents later searched my house and found, among other things, items I was using in connection with my efforts to start fires in Albuquerque including more 7.62- and.45-caliber ammunition, "Tannerite," kerosene, Mason jars, black Gorilla-brand tape, rope cord, firecrackers, propane tanks, motor oil and an assembled explosive device I had made consisting of a firecracker with a fuze taped to a jug of "Klean Heat."   The Old Navy store fire was the last fire I was able to start.

6

d.    I understand that the Old Navy store is a national corporation that regularly obtained its sales inventory in Albuquerque in interstate shipments and that due to the fire and fire suppression damage that I caused, the store's entire sales inventory, which was valued at more than $690,000, was deemed to be a loss.   The store was also forced to close, and has never reopened, causing extensive sales losses.

e.    As charged in the information, on or about November 23, 2016, in Bernalillo County, in the District of New Mexico, I also maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire, the Carlisle Condominiums building or complex located at 3600 Central Avenue S.E., Albuquerque, New Mexico, which building was used in interstate commerce and in an activity affecting interstate commerce.

f.    The Carlisle Condominiums were still under construction when I broke into the construction site prior to approximately 1:15 a.m. by cutting a hole in a chain link fence.   I started the fire at the condominium complex using Mason jar devices, with blue cord taped on them, like those I had used to start fires at other locations.   I understand that the three-story, 36-unit condominium complex with planned retail space on the ground floor, was a 65,000 square foot structure that was approximately 80% complete when I started the fire.   Several condominiums in the complex had been sold, but no one was living in the complex at the time.   The fire I started

7

consumed the structure, and I am aware that the owner has estimated the damages to exceed $8 million.   I also understand that the condominium complex was being built using materials manufactured from out-of-state, and that some of those materials were incorporated into the structure while the complex was used to store other out-of-state building materials and items before they were incorporated into the structure.   I also understand that there was an out-of-state mortgage on the property.

g.   As further charged in the information, on or about November 25, 2016, in Bernalillo County, in the District of New Mexico, I also maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire, the Starbucks Coffee shop building located at 5301 Gibson Boulevard, S.E., Albuquerque, New Mexico, which building was used in interstate commerce and in an activity affecting interstate commerce.

h.   I got into the Starbucks Coffee shop building on Gibson Boulevard by again firing 7.62-caliber rounds into a glass door.   I began firing rounds at approximately 1:52 a.m.   Once inside, I again threw glass Mason jar devices to start fires in the building.   I lit the spilt fuel from the Mason jar devices with a Bic lighter to start fires.   I also taped a firecracker onto a plastic kerosene container and opened the container so that the kerosene would spill out in order to further fuel the fires.   I know that Starbucks is a national chain that operates in interstate commerce and I understand that many of the products and inventory they sell at their stores in Albuquerque

8

are shipped in interstate commerce.   I also understand that the fires I started, and the building's fire suppression system, did significant damage to the interior of the Starbucks Coffee shop on Gibson Boulevard.   I also know that, in addition to physical damage, all the Starbucks coffee shops that I either set fire to, or attempted to set fire to, were forced to close for a period due to the fires I started, which caused sales losses.

i.    As further charged in the information, on or about November 26, 2016, in Bernalillo County, in the District of New Mexico, I also maliciously damaged and destroyed, and attempted to damage and destroy, by means of fire, the "Shred-it" building located at 1415 Broadway Boulevard N.E., Albuquerque, New Mexico, which building was used in interstate commerce and in an activity affecting interstate commerce.

j.    I got into the "Shred-it" building by again firing 7.62-caliber rounds into a glass door.   I began firing rounds at approximately 12:26 a.m.   Once inside, I again used Mason jar devices and road flares to start fires in the building.   I understand that "Shred-it" is a large-scale, paper shredding company that services clients from out-of-state, including clients in Colorado and Arizona.   I also understand that the fires I started, which automatically triggered the building's fire suppression system, did significant damage to the interior of the "Shred-it" building.

k.    As further charged in the information, on or about November 26, 2016, in Bernalillo County, in the District of New Mexico, I also maliciously

9

damaged and destroyed, and attempted to damage and destroy, by means of fire, the Barnes & Noble bookstore building located at the Coronado Mall at 6600 Menaul Boulevard, N.E., Albuquerque, New Mexico, which building was used in interstate commerce and in an activity affecting interstate commerce.

l.   I again got into the Barnes & Noble bookstore by firing 7.62-caliber rounds into a glass window.   Once inside, I used my Mason jar devices and a road flare to start fires in the store.   I understand that Barnes & Noble is a national corporation that sells books and other items in interstate commerce and that it regularly obtained its sales inventory in Albuquerque from interstate shipments.   I am also aware that I caused fire and fire suppression damage to the store and its inventory, as well as lost sales, all of which have been estimated to have exceeded $800,000.

10.   By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty.   The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## **RECOMMENDATIONS**

11.   The United States and the Defendant recommend as follows:

a.   The Defendant and the United States have made an AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific

sentence of no less than five years and no more than twenty years imprisonment is the appropriate disposition in this case.   This agreement takes into account the Defendant's acceptance of responsibility, with no further reduction to occur.   The remaining components of the Defendant's sentence, including, but not limited to, any fine or restitution and the length and conditions of supervised release, shall be imposed by the Court after the presentation of evidence and/or argument by the parties.

b.    If the Court accepts the plea agreement, it must inform the Defendant that the agreed upon disposition will be included in the judgment, and the Court is bound by the terms of the plea agreement once the Court accepts the plea agreement.

## DEFENDANT'S ADDITIONAL AGREEMENT

12.    The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

13.    The Defendant waives the right to withdraw the Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d).   The Defendant may only withdraw the guilty plea in the event the Court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5).   Furthermore, the Defendant understands that if the Court rejects the plea agreement, whether or not the Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and the Defendant shall be subject to prosecution

11

for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

14.     Except under circumstances where the Court, acting on its own, rejects this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

15.     The Defendant recognizes that this plea agreement has already conferred a benefit on the Defendant.   Consequently, in return for the benefit conferred on the Defendant by entering into this agreement, the Defendant agrees not to seek a downward departure or variance from the specific sentence of between five to twenty years imprisonment as agreed to by the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.   If the Defendant, in violation of this paragraph, should nevertheless seek a downward departure or variance, including a departure or variance from the guideline Criminal History Category, the United States shall have the right to treat this plea agreement as null and void and to proceed to trial on all charges before the Court.

## RESTITUTION

16.   The Defendant agrees and acknowledges that, as part of the Defendant's sentence, the Court is not limited to ordering restitution only for the amount involved in the particular offense or offenses to which the Defendant is entering a plea of guilty, but may and should order restitution resulting from all of the Defendant's criminal conduct related to this case.   In this case, the Defendant agrees to pay full restitution for the damages he caused, which is immediately payable to the United States District Court Clerk.   Restitution in this case includes, but is not limited to, physical damages, payroll and clean-up costs, and lost sales and revenues, that the Defendant caused at the Starbucks Coffee shop located at 800 Broadway Boulevard N.E., the building housing Project Defending Life located at 625 San Mateo Boulevard, N.E., the Carlisle Condominiums located at 3600 Central Avenue S.E., the Starbucks Coffee shop located at 5301 Gibson Boulevard, S.E., the Starbucks Coffee shop located at 4407 Lomas Boulevard N.E., the Starbucks Coffee shop located at 3400 Central Avenue, S.E., the Barnes & Noble bookstore located at the Coronado Mall at 6600 Menaul Boulevard, N.E., the building housing "Shred-it," a paper shredding company, located at 1415 Broadway Boulevard., N.E., and the Old Navy retail store located at 4900 Cutler Avenue, N.E..   In the event that the Court orders a schedule of restitution payments, the Defendant consents to the entry of a further term of the restitution order that provides that such schedule is merely a minimum schedule of payments. No later than July 1st of each year after sentencing, until restitution is paid in full, the Defendant shall provide the Asset Recovery Unit, United States Attorney's Office, P.O. Box 607, Albuquerque, NM 87103, (1) a completed and signed financial statement provided to the

13

Defendant by the United States Attorney's Office and/or the United States Probation Office, and (2) a copy of the Defendant's most recent tax returns.

## FORFEITURE

17.     The Defendant agrees to forfeit, and hereby forfeits, whatever interest the Defendant may have in any asset derived from or used in the commission of the offense(s) in this case.   The Defendant agrees to cooperate fully in helping the United States (a) to locate and identify any such assets and (b) to the extent possible, to obtain possession and/or ownership of all or part of any such assets.   The Defendant further agrees to cooperate fully in helping the United States locate, identify, and obtain possession and/or ownership of any other assets about which the Defendant may have knowledge that were derived from or used in the commission of offenses committed by other persons.

18.     The Defendant voluntarily and immediately agrees to the administrative, civil, or criminal forfeiture to the United States all of the Defendant's right, title, and interest in the following assets and properties:

a.     All items of real and personal property that were seized as evidence from the Defendant's vehicle and the Defendant's residence, to include all products that could be used to construct explosive devices;

b.     a Kimber Stainless pro TLE II model .45-caliber pistol bearing serial number KR20428;

c.     a Palmetto State Armory KS47 model 7.62 X 39mm caliber rifle bearing serial number KS000586, and;

d.     a Springfield Armory M1A rifle bearing serial number 396680.

14

19.    The Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to, execution of any documents necessary to transfer the Defendant's interest in the above-described property to the United States.

20.    The Defendant agrees to waive the right to notice of any forfeiture proceeding involving the above-described property.

21.    The Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of the above-described property.   The Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of said property in any proceeding. The Defendant agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of said property by the United States or any State or its subdivisions.

## WAIVER OF APPEAL RIGHTS

22.    The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed.   Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court.   In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

15

## GOVERNMENT'S ADDITIONAL AGREEMENT

23.     Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that the United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present indictment and information.

24.     The United States recognizes that, by law, it cannot appeal any sentence of between five to twenty years imprisonment imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement.

25.     This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## VOLUNTARY PLEA

26.     The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda).   The Defendant also represents that the Defendant is pleading guilty because the Defendant is, in fact, guilty.

## VIOLATION OF PLEA AGREEMENT

27.     The Defendant agrees that if the Defendant violates any provision of this agreement, the United States may declare this agreement null and void, and the Defendant will thereafter be subject to prosecution for any criminal violation, including, but not limited to, any crime(s) or offense(s) contained in or related to the charges in this case, as well as perjury, false

statement, obstruction of justice, and any other crime committed by the Defendant during this prosecution.

## SPECIAL ASSESSMENT

28.     At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $500.00 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

29.     This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties.   This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this _11th_ day of _October_, 2017.

JAMES TIERNEY
Acting United States Attorney

FRED J. FEDERICI
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico   87102
(505) 346-7274

17

I have carefully discussed every part of this agreement with my client.   Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.   In addition, I have explained to my client the element of each offense to which he is pleading guilty.   To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____
ZACHARY IVES, ESQUIRE
Attorney for the Defendant

I have carefully discussed every part of this agreement with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

_____
DAVID A. HICKMAN
Defendant

18